```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA

                    Alexandria Division


MONTANILE,                    )
                              )
      Plaintiff,              )
                              )
           v.                 )    1:08cv716 (JCC)
                              )
BOTTICELLI, et al.,           )
                              )
      Defendants.             )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on separate Rule 12(b)(6) motions to dismiss filed by Defendant Tom Botticelli ("Botticelli") and Defendant United Parcel Service, Inc. ("UPS") (collectively, "Defendants"). For the following reasons, the Court will **grant in part and deny in part** Botticelli's Motion and **grant** UPS's Motion.

### I. Background

Plaintiff Denise Montanile ("Plaintiff") brings suit against Botticelli and UPS for actions arising out of Botticelli's unsuccessful attempt to purchase vintage baseball cards from Plaintiff. Plaintiff sued Botticelli for malicious prosecution and false arrest. She filed suit against UPS for negligence and breach of contract. Originally, Plaintiff did not file the second page of her Complaint with Botticelli or the Court. A complete copy was brought to the hearing on Defendants'

1

motions. Because Botticelli did not have all of Plaintiff's allegations before him at the time he moved to dismiss, the memorandum supporting his motion outlined his version of the facts of the case and provided documentary evidence supporting them. They differ sharply from Plaintiff's version in several crucial aspects. On a motion to dismiss, however, the Court is concerned only with the facts as pled in the Complaint. Those facts are as follows.

On or about August 30, 2006, Botticelli ordered six vintage baseball cards from Plaintiff, who used an online storefront to advertise sports memorabilia for sale. Botticelli paid for the cards by check, and the check, in the amount of $7,800, was cashed. Plaintiff claims that she insured and shipped the cards to Botticelli via UPS on the day they were ordered. Compl. at 2. Botticelli declared that he never received the cards. Plaintiff alleges that UPS failed to properly deliver the package. *Id*. She states that she told Botticelli she had filed a claim for the misplaced package with UPS and that "the matter would be settle [sic] civilly by a refund when UPS remitted the funds." *Id*. at 3.

Botticelli met with the police department in Fairfax County, Virginia and secured a warrant for Plaintiff's arrest. He accused Plaintiff of obtaining money by false pretenses in violation of Va. Code Ann. § 18.2-178. *Id*. at 2. Plaintiff was

subsequently arrested and jailed for two weeks in New Jersey and then extradited to Virginia, where she was released after posting bail. *Id.* The charges against her were ultimately dismissed after a filing of *Nolle Prosequi* by the office of the Commonwealth's Attorney in Fairfax County. *Id.* at 3. Plaintiff seeks $5 million in compensatory damages and $5 million in punitive damages for malicious prosecution and false arrest.

Plaintiff's negligence claim against UPS is based on the same facts. She alleges that the malicious prosecution was a direct result of UPS's negligence in not delivering the package properly. She also brings a breach of contract claim against UPS.

After paying the shipping fee, which included the cost of insurance, Plaintiff was given a receipt by UPS. *Id.* at 4. UPS, she claims, breached its duty to deliver the package to Botticelli and obtain his signature acknowledging receipt. Instead, UPS left the package at Botticelli's address. Plaintiff suggests that the package was "allegedly not received" by Botticelli. *Id.* at 5. Later in her Complaint, Plaintiff states that UPS "merely left the parcel at some address and departed." *Id.* at 6. UPS then refused to pay Plaintiff's claim for insurance coverage. Plaintiff seeks $5 million in compensatory damages and $5 million in punitive damages on the negligence claim against UPS. On the breach of contract claim, she asks for

"the full benefits of her contract," including the insurance proceeds from the missing package.  *Id*. at 7.

Plaintiff filed suit in this Court on July 11, 2008, basing jurisdiction on diversity.  Botticelli and UPS moved to dismiss the claims against them on September 5 and 10, respectively.  Plaintiff filed memoranda in opposition, and each Defendant submitted a reply memorandum.  Defendants' motions are before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

**III. Analysis**

A. <u>Botticelli's 12(b)(6) Motion to Dismiss</u>

The Complaint charges Botticelli with malicious prosecution and false arrest.  While Botticelli has submitted evidence directly contradicting Plaintiff's allegations as to the timing of the shipment and delivery – evidence that would weigh heavily in Botticelli's favor in a motion for summary judgment.[1]  In deciding the present motion, however, the Court cannot look outside the Complaint.  *See Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 281-82 (E.D. Va. 1995).  Under Rule 12(d), the Court has the authority to convert a motion to dismiss to a motion for summary judgment in certain situations.  Fed. R. Civ. P. 12(d).  Such a conversion would be inappropriate at this preliminary stage of the litigation.  Conversion was not requested, and neither Botticelli nor Plaintiff would have appropriate notice that the Court intended to convert the motion.  *See Johnson v. RAC Corp.*, 491 F.2d 510, 513-14 (4th Cir. 1974).

1. <u>Malicious Prosecution</u>

In Virginia, suits "for malicious prosecution arising from criminal proceedings" are judicially disfavored.  *Reilly v. Shepherd*, 273 Va. 728, 733, 643 S.E.2d 216, 218 (2007).  "The

---

[1] Botticelli's evidence consists of emails that he and Plaintiff exchanged regarding their dispute.  Those emails are not referenced in the Complaint and are not obviously integral to the facts stated in the Complaint.  Thus, the Court cannot consider them here.  *See Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 376 F.3d 212, 234 (4th Cir. 2004).

requirements for maintaining such actions are more stringent than those applied to other tort cases, and are imposed to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions." *Id.* (citing *Ayyildiz v. Kidd*, 220 Va. 1080, 1082, 266 S.E.2d 108, 110 (1980)).

A plaintiff must prove four elements to prevail on a malicious prosecution claim under Virginia law. In order to survive a motion to dismiss, then, Plaintiff must make allegations that support each element of the claim. The cause of action requires proof that a defendant "(1) instituted or procured a criminal prosecution of the plaintiff; (2) without probable cause; (3) acted maliciously; and (4) the prosecution was terminated in a manner not unfavorable to the plaintiff." *Brice v. Nkaru*, 220 F.3d 233, 237 (4th Cir. 2000); *see also Reilly*, 273 Va. at 732; *Baker v. Elmendorf*, 271 Va. 474, 476, 628 S.E.2d 358, 359 (2006). Botticelli acknowledges that Plaintiff's Complaint sufficiently alleges the first and fourth elements. He claims, however, that Plaintiff's allegations as to lack of probable cause and malice are conclusory and insufficient as a matter of law.

By Virginia statute, a magistrate or other officer authorized to issue criminal warrants can issue an arrest warrant after finding probable cause to believe that an accused has committed an offense. Va. Code Ann. § 19.2-72. The probable

cause determination occurs after an examination, on oath, of the person complaining of the criminal offense or of other witnesses. *Id*. Thus, probable cause depends on the sworn testimony of a complainant or of witnesses summoned by a law enforcement officer. "In the context of a malicious prosecution action, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Andrews v. Ring*, 266 Va. 311, 323, 585 S.E.2d 780, 786 (2003); *Bain v. Phillips*, 217 Va. 387, 228 S.E.2d 576, 581 (1976). The question whether probable cause existed "is to be applied as of the time when the action complained of was taken." *Lee v. Southland Corp.*, 219 Va. 23, 26, 244 S.E.2d 756, 759 (1978). Thus, Plaintiff must allege facts that could show that Botticelli did not have a reasonable belief that a crime had been committed at the time that he secured the warrant. *See Caldwell v. Green*, 451 F. Supp. 2d 811, 818 (W.D. Va. 2006).

Virginia courts have defined "probable cause" as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 684, 152 S.E.2d 271, 275 (1967) (quotation omitted); *see also*

*Westreich v. McFarland*, 429 F.2d 947, 948 & n.2 (4th Cir. 1970) (citing *Giant of Virginia* as stating the "preferred definition" in Virginia).

Botticelli contends that the Complaint does not allege a lack of probable cause. He notes that the Complaint confirms that he never received the baseball cards he paid for. *See* Compl. at 5-6. Based on these facts admitted in the Complaint, Botticelli argues that he had probable cause to tell the police that he never received the goods for which he paid.[2] Assuming the truth of Botticelli's version of the facts, his argument that Plaintiff ultimately will not be able to prove probable cause has merit.[3] Such a determination, however, would be premature at the motion to dismiss stage, where the only question is whether Plaintiff has stated a claim.

Looking at the Complaint as a whole, including its heretofore missing second page, the Court finds that Plaintiff has adequately alleged a lack of probable cause. Plaintiff alleged that she mailed the baseball cards on the same day Botticelli ordered them; that Botticelli never received the goods

---

[2] The Complaint alleges that Botticelli procured a warrant on a criminal charge of obtaining money by false pretenses under Va. Code Ann. § 18.2-178. The statute requires that a person obtain a good by false pretenses and intend to defraud. If the warrant was proper, then, Botticelli must have done more than simply "report[]" that he "suffered a loss." *See* Botticelli's Mem. in Supp. at 3.

[3] In one of a number of discrepancies between the documentary evidence attached to Botticelli's reply brief and the Complaint, the e-mails call into serious doubt Plaintiff's account of when the package was sent. *See* Botticelli's Reply Br., Ex. 1.

shipped to him; that there was some contact between Plaintiff and Botticelli during which she explained that the package had been mailed and that an insurance claim had been filed; and that Botticelli thereafter procured an arrest warrant for Plaintiff. Such allegations make it at least plausible that Botticelli lacked the knowledge of facts and circumstances that could give him probable cause to have Plaintiff arrested.[4]  *See Bell Atlantic Corp.*, 127 S. Ct. at 1973; *see also Giant of Virginia*, 207 Va. at 684, 152 S.E.2d at 275.  At this preliminary stage, that is enough to meet the pleading standard on this element of the cause of action.

Botticelli also argues that Plaintiff has not pled sufficient facts to permit a finding of malice.  In the context of a malicious prosecution claim, malice means a "controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished."  *Hudson v. Lanier*, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998).  Malice can be inferred from the absence of probable cause.  *Caldwell*, 451 F. Supp. 2d at 819 (citation omitted).  Malice is not presumed by law; it must

---

[4] Botticelli's argument that Plaintiff did not plead a lack of probable cause was made without the benefit of the full Complaint.  Without the second page of the Complaint, it was unclear that Plaintiff had even alleged mailing the baseball cards to Botticelli at all.  Botticelli suggested that mere allegations that he may have known about an insurance claim with UPS could not show lack of probable cause.  The argument was compelling.  By itself, the filing of an insurance claim would not suffice to show a lack of probable cause.  The possibility that insurance – regardless of who purchased the coverage – may protect a person from crime-related loss would not insulate a wrongdoer from prosecution for a completed criminal act.

exist in fact and be proven like any other fact. *Freezer v. Miller*, 163 Va. 180, 203, 176 S.E. 159, 168 (1934). Here, because Plaintiff alleged probable cause, a sufficient allegation of malice can be inferred. At this point, dismissal for failure to properly allege malice would be inappropriate. Plaintiff has stated a claim for malicious prosecution.

### 2. False Arrest

False arrest is a species of false imprisonment; in Virginia, the torts are analogous. *See Motley v. Virginia Hardware & Mfg. Co.*, 287 F. Supp. 790, 792 (W.D. Va. 1968); *see also Coughlan v. Jim McKay Chevrolet, Inc.*, 18 Va. Cir. 265, 1989 WL 646497, at *1 (Va. Cir. Ct. 1989); 32 Am. Jur. 2d False Imprisonment § 3. False imprisonment requires "the direct restraint by one person of the physical liberty of another without adequate legal justification." *W.T. Grant Co. v. Owens*, 149 Va. 906, 921, 141 S.E. 860, 865 (1928) (quotation omitted); *see also Jordan v. Shands*, 255 Va. 492, 497, 500 S.E.2d 215, 218 (1998) (citing *W.T. Grant*'s definition of false imprisonment).

In order to state a claim for false imprisonment, a plaintiff must allege that the process leading to the arrest was unlawful. *Cole v. Eckerd Corp.*, 54 Va. Cir. 269, 2000 WL 33595085, at *2 (Va. Cir. Ct. 2000). A warrant that is regular on its face – even one procured without probable cause – does not create a cause of action for false imprisonment. *Id.* at *3

(citing *Coughlan*, 18 Va. Cir. 265, 1989 WL 646497, at *1).  While false arrest and false imprisonment charges are usually filed against the arresting agent, "[c]ourts in Virginia (and neighboring states) have repeatedly permitted a plaintiff to maintain a false imprisonment claim against private-party defendants who did not themselves physically apprehend the plaintiff but rather requested that others do so."  *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 142 (D.D.C. 2005); *see Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489, 50 S.E.2d 387, 389 (1948).  The focus of a false arrest claim is on the person actually restraining a plaintiff's liberty; others can be liable for that restraint when the arresting agent does not have a "sufficient legal excuse" to make the arrest – for example, a warrant.  *Wickline*, 50 S.E.2d at 388 (quotation omitted).  False arrest differs from malicious prosecution in that good faith or probable cause cannot serve as a defense.  *Id*. at 389.

   Here, Plaintiff alleged that she was falsely arrested based on wrongful information volunteered by Botticelli to procure an arrest warrant.  Botticelli claims that, because the Complaint does not allege that he actually arrested Plaintiff or conducted any "direct restraint," Plaintiff has not pled a claim of false arrest.  In support, he cites *Cole v. Eckerd Corp.*, 54 Va. Cir. 269, 2000 WL 33595085, at *3.  In *Cole*, employees of an Eckerd store informed the police that they suspected a person of

11

stealing medicine; a warrant was issued based on probable cause and the police later arrested Cole pursuant to the warrant. *Id*. at *1.  Holding that a cause of action for false arrest would not lie against the Eckerd store, the court quoted Virginia cases for the proposition that the issuance of a regular warrant, even if it was procured without probable cause, precludes a charge of false imprisonment.  *Id*. at *3 (quoting *Coughlan*, 18 Va. Cir. 265, 1989 WL 646497, at *1).

In dicta not central to its holding, the *Cole* court quoted a Virginia case stating that if a defendant does not participate in the physical arrest, the defendant cannot be liable for false imprisonment caused by an error on the part of the magistrate or the arresting police officer.  *Id*. (quoting *Smith v. Button*, 43 Va. Cir. 379 (1997)).  For this proposition, *Smith v. Button* cites 21 A.L.R. 643 § 23 – which, on closer examination, does not stand for the proposition stated in *Cole*. Section 23 of 21 A.L.R. 643 states that "[t]he mere giving of information to an officer tending to show that a crime has been committed is not enough to render the informer guilty of a resulting false imprisonment by an officer, and this is so even if the information purports to show that the person later falsely arrested is the one who committed the alleged crime."  The A.L.R. section does not say that one has to be the arresting agent in order to face liability.  Instead, it explains that innocent informers have a form of limited liability.

12

In light of the weak authority for the necessity of personal involvement cited in *Cole* and contradicted by *Kalantar* and *Wickline*, the Court does not believe that Plaintiff had to allege that Botticelli personally arrested her in order to state a claim for false arrest or false imprisonment.

Virginia courts, though, do appear to have accepted the proposition that in order to state a claim for false arrest or false imprisonment, a complaint must allege that the arrest was made without a lawful warrant or other form of lawful process – that is, a warrant "regular and legal in form or regular on its face." *Motley v. Virginia Hardware & Mfg. Co.*, 287 F. Supp. 790, 792 (D.C. Va. 1968) (quotations omitted); *see S.H. Kress & Co. v. Roberts*, 143 Va. 71, 75-76, 129 S.E. 244, 246 (1925); *see also Coughlan*, 18 Va. Cir. 265; *Cole v. Eckerd Corp.*, 54 Va. Cir. 269. Here, the Complaint did not allege any problem with the legal form of the warrant or that the arrest was made without a lawful warrant. For this reason, the Court will dismiss Plaintiff's claim for false arrest but give leave to amend.

B. UPS's 12(b)(6) Motion to Dismiss

Plaintiff brings claims for negligence and breach of contract against UPS arising out of its transportation and delivery of goods in interstate commerce. The Complaint states that UPS breached its duty to Plaintiff by failing to deliver the package to Botticelli personally and failing to obtain his signature. Compl. at 5. In Count III, Plaintiff alleges that by

13

improperly delivering the package, UPS breached its contract with her.  *Id*. at 6.  Among other defenses, UPS asserts that the claims should be dismissed because they are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (the "ICC").

The Carmack Amendment to the ICC exclusively governs a motor carrier's liability that arises out of the carrier's obligations related to the delivery and transportation of property.  *See* 49 U.S.C. § 14706.  In *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-506 (1913), the Supreme Court held that the Carmack Amendment occupies the field of interstate motor shipments and supersedes all related state regulation.

The law was intended to standardize liability rules for carriers, which at one point varied widely among states.  *Id*. at 505.  The Amendment superseded any state laws that attempted to nullify contracts limiting the liability of common carriers.  *Id*. at 507.  The statute "embrace[s] responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation . . . includ[ing] delivery."  *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916).  The Amendment provides for civil actions in federal court brought "under this section . . . against a delivering carrier" or "under this section . . . against the carrier alleged to have caused the loss or damage."  49 U.S.C. § 14706(d)(1)-(2).

The Fourth Circuit has recognized the Carmack Amendment's preemption of common law claims:

> Every circuit court that has considered the issue has relied upon the [Supreme] Court's reasoning in *Adams Express* to conclude likewise that the Carmack Amendment preempts a shipper's state and common law claims of breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment under a valid bill of lading.

*Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 705 (4th Cir. 1993) (collecting cases). The *Shao* court went on to find that the Amendment created a national uniform policy regarding the liability of carriers for goods lost or damaged in shipment. *Id.* at 706. "Allowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy." *Id.* In *Smith v. United Parcel Service*, the Eleventh Circuit expressly held that the Carmack Amendment preempted state law claims based on UPS's failure to transport and deliver packages. 296 F.3d 1244, 1249 (11th Cir. 2002).

Here, all of Plaintiff's claims against UPS relate to its alleged non-delivery or mis-delivery of a package. The Carmack Amendment preempts such common law claims made against a motor carrier. To the extent delivery was made over land, Plaintiff can recover against UPS on her breach of contract and negligence claims only through the federal suit provisions of the

Carmack Amendment, 49 U.S.C. § 14706(d).[5]  For this reason, the Court will dismiss both claims against UPS and allow Plaintiff to amend her Complaint.

### IV. Conclusion

For the foregoing reasons, the Court will grant Botticelli's motion to dismiss the false arrest claim but will deny the motion as to the malicious prosecution claim.  The Court will grant Defendant UPS's Motion to Dismiss.  Plaintiff will be given leave to amend the Complaint as to each dismissed claim.

An appropriate Order will issue.

November 25, 2008                              /s/
Alexandria, Virginia                    James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE

---

[5] If the delivery of Plaintiff's package was made via air, federal common law governs Plaintiff's suit involving a shipment of goods in interstate commerce.  See McCall-Thomas Eng'g Co. v. Fed. Express Corp., 81 F.3d 28, 30 n.* (4th Cir. 1996).  Plaintiff gave no indication, in her Response to UPS's Motion to Dismiss or during argument, that the shipment was made by air rather than by ground.  To the extent Plaintiff used UPS's air delivery service, her claims will be considered under federal common law.