IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MONTANILE,                    )
                              )
      Plaintiff,              )
                              )
          v.                  )    1:08cv716 (JCC)
                              )
BOTTICELLI, et al.,           )
                              )
      Defendants.             )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Denise
Montanile's ("Montanile's") Motion to Dismiss the Counterclaims
brought by Defendant Tom Botticelli ("Botticelli").  For the
following reasons, the Court will deny Plaintiff's Motion.

## I. Background

Montanile brought suit against Botticelli and Defendant
United Parcel Service, Inc. ("UPS") (collectively, "Defendants")
for events originating with Botticelli's unsuccessful attempt to
purchase vintage baseball cards from Montanile.  Montanile's
complaint (the "Complaint"), filed in July 2008, claimed that
Botticelli had her falsely arrested and then maliciously
prosecuted her.  The Complaint accused UPS of negligence and
breach of contract.  After briefing and oral argument, the Court
dismissed the claim against Botticelli for false arrest but
denied his motion to dismiss the malicious prosecution claim.

1

The Court also dismissed the claims against UPS.  The Court's Order gave Montanile leave to amend her Complaint.  She did so in December 2008.  The allegations in the Amended Complaint – substantially the same as those in the original Complaint – are as follows.

On or about July 16, 2006, Botticelli ordered six vintage baseball cards from Montanile, at the cost of $7,800. Montanile insured and shipped the cards to Botticelli via UPS on the August 30, 2006.  Am. Compl. at 2.  Botticelli declared that he never received the cards.  Montanile alleges that UPS failed to properly deliver the package.  *Id*.  She states that she told Botticelli she had filed a claim for the misplaced package with UPS and that "the matter would be settle [sic] civilly by a refund when UPS remitted the funds."  *Id*. at 3.

Botticelli met with the police department in Fairfax County, Virginia and secured a warrant for Montanile's arrest. He accused Montanile of obtaining money by false pretenses in violation of Va. Code Ann. § 18.2-178.  *Id*. at 2.  Montanile was subsequently arrested, jailed for two weeks in New Jersey, and then extradited to Virginia, where she was released after posting bail.  *Id*.  The charges against her were ultimately dismissed after a filing of *Nolle Prosequi* by the office of the Commonwealth's Attorney in Fairfax County.  *Id*. at 3.  Montanile seeks $5 million in compensatory damages and $5 million in

2

punitive damages for each claim against Botticelli.

Montanile bases her claim against UPS, brought pursuant to the Carmack Amendment, 49 U.S.C. § 14706, on the same facts. She alleges that the malicious prosecution was a direct result of UPS's negligence in not delivering the package properly; she also implies that UPS breached a contract with her.

After paying the shipping fee, which included the cost of insurance, Montanile was given a receipt by UPS. *Id.* at 5. UPS, she claims, breached its duty to deliver the package to Botticelli and obtain his signature acknowledging receipt. Instead, UPS left the package at Botticelli's address. Montanile suggests that the package was "allegedly not received" by Botticelli. *Id.* at 6. Later in the Amended Complaint, Montanile states that UPS "merely left the parcel at some address and departed." *Id.* at 7. UPS then refused to pay Montanile's claim for insurance coverage. Montanile seeks statutory damages and "the full benefits of her contract including the insurance proceeds she contracted for." *Id.* at 7.

On December 18, 2008, Botticelli submitted an Answer and a Counterclaim against Montanile (the "Counterclaim"), requesting specific performance of their agreement and alleging that Montanile's actions violated the Virginia Consumer Protection Act. The Counterclaim alleges that around July 16, 2006, Montanile paid Botticelli for the six baseball cards with a

3

check in the amount of $7,820, which Montanile cashed.
Countercl. at ¶ 2.  For weeks, Botticelli did not receive the
cards.  He e-mailed Montanile numerous times and requested a
tracking number for the shipment.  Montanile responded first by
telling Botticelli that his shipment was still being processed,
then that the package was scheduled to ship later in the week,
and later, when Botticelli threatened to ask for a refund, that
she was waiting "for payments to clear our bank" and that the
package should have been on its way.  *Id.* at ¶¶ 3-5.

When, approximately six weeks after ordering the
baseball cards, Botticelli told her that he was planning to meet
with the police because he had not received the cards and
Montanile was ignoring his e-mails and phone calls, Montanile
told him that the package had not yet shipped because she was
still waiting for one card to arrive.  *Id.* at ¶ 6.  The next day,
August 30, 2006, Montanile e-mailed Botticelli to tell him that
the package had shipped.  The following day, Botticelli received
a sealed, empty box.  He e-mailed Montanile to request an
immediate refund.  Montanile never delivered the baseball cards
and did not refund the $7,820.  Botticelli alleges that Montanile
never actually possessed the baseball cards.  *Id.* at ¶ 8.

Botticelli's claim for specific performance requests
the tender of the six rare baseball cards he ordered in the
condition in which they were advertised at the time of sale.  His

4

claim under the Virginia Consumer Protection Act asks for damages and attorney's fees pursuant to Va. Code Ann. § 59.1-204.

Montanile moved to dismiss the Counterclaim on December 30, 2008.  Botticelli opposed the motion on January 14, 2009. This motion is before the Court.

## II.   Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

## III. Analysis

Montanile moves to dismiss both counterclaims for failure to state a cause of action under Rule 12(b)(6).  The

5

Court will address each counterclaim in turn.

    A.  <u>Counterclaim I: Specific Performance</u>

       Botticelli's first counterclaim requests specific performance of the agreement that he and Montanile reached: that he would pay $7,820 for six vintage baseball cards.  He claims to have no adequate remedy at law because the baseball cards are rare, highly unique, and specialized goods.  Countercl. at ¶ 14. Botticelli requests "specific performance of the agreement . . . that Plaintiff tender the six rare baseball cards in the condition advertised at the time of sale."  *Id.* at ¶ 15.

       In Virginia, specific performance is an equitable remedy that may be considered "where the remedy at law is inadequate and the nature of the contract" would allow specific enforcement without "great practical difficulties." *Chattin v. Chattin*, 427 S.E.2d 347, 350 (Va. 1993) (citation omitted).  "A remedy at law is not adequate if it is partial"; instead, an adequate remedy at law must "'reach the end intended, and actually compel a performance of the duty in question.'" *Id.* at 351 (quoting *Buchanan v. Buchanan*, 6 S.E.2d 612, 620 (Va. 1940). Specific performance is "addressed to the reasonable and sound discretion of the court." *Seaboard Ice Co. v. Lee*, 99 S.E.2d 721, 726-27 (Va. 1957).  "A contract must be complete and certain and . . . the essential elements of price and terms of sale must have been agreed upon before a court of equity will specifically

6

enforce the contract." *Rolfs v. Mason*, 119 S.E.2d 238, 240 (Va. 1961) (citation omitted).

Here, Botticelli has alleged that the parties entered into a "valid and enforceable agreement for the sale, delivery and purchase of the six rare baseball cards," that he performed by paying for the cards, and that Montanile failed to perform by never sending him the cards.  Countercl. at ¶¶ 10-13.  Looking at the face of the Counterclaim, it appears that Botticelli has pled a claim for specific performance.

Montanile does not argue that any infirmity in pleading should lead to dismissal.  Instead, she suggests that the issue is "moot" because she will reimburse the defendant as soon as UPS pays her the insurance proceeds for the lost baseball cards.  Pl.'s Mot. at 1.

Montanile's promise that she will refund Botticelli's money at some point in the future does not serve to make the issue of specific performance moot.  First, Botticelli's claim requests specific performance, not a refund.  Second, he has pled facts sufficient to allege that Montanile did not perform the contract.  Montanile's statement that she will refund the payment at some indefinite point in the future – depending on the outcome of a pending insurance dispute – has no bearing whatsoever on the merits of Botticelli's claim, which alleges that a breach of contract has already occurred.  Montanile's statement that

Botticelli will be reimbursed after UPS pays her does not make Botticelli's claim against her – which is a live controversy – moot.  The Court will not dismiss the claim for specific performance.

    B. <u>Counterclaim II: Virginia Consumer Protection Act</u>

Botticelli's second counterclaim requests relief pursuant to the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 to 59.1-207 (the "VCPA" or the "Act").  The VCPA makes unlawful a number of fraudulent acts and practices having to do with the sale of goods.  *Id.* at § 59.1-200.  The acts, when committed by a "supplier," in connection with a "consumer transaction," subject the "supplier" to civil prosecution and to private recovery actions.  *Id.* at §§ 59.1-200, 59.1-201 to 59.1-204.  The law provides for the recovery of actual damages and attorney's fees; willful violations allow a court to impose up to treble damages.  *Id.* at § 59.1-204(A)-(B).

    The VCPA defines "goods" as "all real, personal or mixed property, tangible or intangible."  *Id.* at § 59.1-198.  It defines a "consumer transaction" as, *inter alia*, "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes."  *Id.*  A "supplier" is "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions . . . .".  *Id.*  Botticelli alleges that,

8

under the VCPA, (1) the baseball cards are "goods," (2) Montanile was a "supplier," and (3) he and Montanile engaged in a "consumer transaction."  Countercl. at ¶ 17.

Botticelli alleges that a number of actions on Montanile's part violated the VCPA, including the Act's proscriptions on "[m]isrepresenting the source . . . of goods," "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model," "[a]dvertising goods . . . with intent not to sell them as advertised," and "[u]sing any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction."  Va. Code Ann. §§ 59.1-200(2), (5), (8), (14).

Montanile suggests that Botticelli's allegations pursuant to the VCPA are "merely speculative" in that they "cite sections to a statute but do not allude to the nature of the illegal conduct alleged."  Pl.'s Mot. at 1.

The Court finds that Botticelli has properly pled a VCPA claim.  The facts alleged in the Counterclaim are more than sufficient to make plausible the allegation that Montanile used "deception, fraud, false pretense, false promise or misrepresentation" in connection with the "consumer transaction" she entered into with Botticelli.  The Counterclaim clearly alleges that Montanile entered into an agreement with Botticelli, took his money, and then failed to deliver either the baseball

cards or a refund.   The Counterclaim also alleges that, "on information and belief, [Montanile] never actually possessed the cards."  Countercl. at ¶ 8.  One who advertises goods one does not possess (and so does not, in good faith, intend to sell) may be subject to liability under the VCPA.  The Court will not dismiss Botticelli's second counterclaim.

### IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion to Dismiss Defendant's Counterclaims.

An appropriate Order will issue.


January 26, 2009                    _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE